THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD CAMERON, Relator, *v.* JOSEPH H. WILSON, as Warden of Great Meadow Prison, Comstock, New York, Respondent.

Supreme Court, Washington County, January 29, 1938.

*Richard Cameron, in pro per.*

*John J. Bennett, Jr., Attorney-General* [*Everett D. Mereness Assistant Attorney-General,* of counsel], for the respondent.

ROGERS, J. The relator was received in Sing Sing Prison on February 13, 1931, convicted of the crime of burglary, third degree, for which he received an indeterminate sentence of two and one-half years to five years, and the crime of grand larceny, second degree, for which he received a sentence of two and one-half years to five years. While serving his sentence on the burglary, third degree, charge, and on July 30, 1932, the relator escaped from prison and was returned February 13, 1933.

The maximum sentence on the burglary, third degree, charge, expired June 28, 1936. The relator was paroled on his first sentence on September 6, 1933, to start the service of his second sentence on his conviction for grand larceny, second degree, the maximum of which sentence will expire on September 6, 1938.

The relator was paroled on the second sentence to start the service of his third sentence for the crime of escape, of one year, six months, on July 25, 1935. The maximum of the third sentence for escape expired on January 25, 1937.

The relator was paroled on the third sentence on September 2, 1936, and was thereafter duly declared delinquent as of the same date of his parole, owing two years, four days, on the grand larceny, second degree, sentence, and four months, twenty-three days, on the escape sentence, making a total of time owed when returned to prison on June 11, 1937, of two years, four months and twenty-seven days, and making the maximum expiration date November 8, 1939.

With respect to the sentence for burglary and grand larceny, which were indeterminate sentences of two and one-half to five years each, the relator was automatically subject to the jurisdiction of the Parole Board. In respect to the definite sentence of one year, six months, the Governor on the 27th of August, 1936, commuted said sentence and the relator was eligible for parole on September 2, 1936, and as required by section 242 of the Correction Law, annexed the condition to such commutation that the relator should be subject to the jurisdiction of the Parole Board.

The sole question presented in this matter, and in several other habeas corpus proceedings now pending before me, is the construction to be placed upon the amendments to section 2190 of the Penal Law made by chapters 70 and 328 of the Laws of 1936. Subdivisions 2 and 3 of section 2190 read as follows:

" (2) Where a person, under sentence for a felony, afterwards commits any other felony, and is thereof convicted and sentenced to another term of imprisonment, the latter term shall not begin until the expiration of all the terms of imprisonment, to which he is already sentenced.

" (3) Whenever under the provisions of this section or under the sentence of the court, an indeterminate sentence is required to terminate before the commencement of another term for such purposes only, such indeterminate sentence shall be deemed to terminate at the expiration of the minimum thereof, less any discretionary reduction which may be allowed, pursuant to the provisions of article nine of the correction law, and any prisoner serving such a sentence may then in the discretion of the board of parole be allowed to commence the service of such subsequent term."

The relator contends that pursuant to subdivision 3 his indeterminate sentence terminated when the Parole Board permitted him to commence the service of his definite sentence for escape. If the relator is correct he is now entitled to his discharge.

Subdivision 3 of section 2190 was enacted for the benefit of prisoners and does not, as penal statutes relating to preconviction matters, have to be construed, when doubt exists as to its meaning, in favor of the prisoner. The intent of the State, acting through its Legislature, is of supreme importance, because this statute does not take away anything from a prisoner, but, on the contrary, bestows upon him amelioration of his punishment. It makes possible the concurrent running of a portion of an indeterminate sentence with a portion of a subsequent sentence, and it may speed up the time when a prisoner may be placed on parole. The use of the word " terminate " is perplexing, because it is ordinarily considered that a term that is " terminated " is over and done for. However, when the words " for such purposes only " are read in connection with the word " terminated," it is palpable that the Legislature did not intend to permit the cancellation and termination of the balance of an indeterminate sentence by making it possible for service on the second sentence to start. It had in mind acceleration of service on the second sentence rather than the termination of the first sentence. If the Legislature had intended that the balance of the first sentence be wholly terminated and canceled when the Parole Board permitted the prisoner to start the second sentence it would have left out of the statute the words " for such purposes only." These words were inserted to qualify the meaning of the word " terminated." Section 2190 itself in subdivision 2 provides that the service of a second sentence shall not start until the expiration of previous sentences. The Legislature did not change in substance this provision when it amended the section in 1936. Therefore, to make the new provision, subdivision 3, consistent with subdivision 2 it used the limiting words " for such purposes only." Nor did the Legislature change section 2168 of the Penal Law which provides that the imprisonment

directed by a judgment shall not be suspended or interrupted after such imprisonment shall have been commenced. Nor section 470-a of the Code of Criminal Procedure to the same effect, or section 487 of the Code of Criminal Procedure, which provides that where there is a judgment of imprisonment the prisoner must be detained until the judgment be complied with. The reasonable construction of the section is that it does not forgive any part of a prior sentence, but permits a portion thereof to run by way of parole concurrently while the prisoner is serving his second sentence. To hold otherwise would be to place it in the power of the Parole Board to terminate prior indeterminate sentences after the minimum thereof was served and thus change the judgment of conviction and offend the provisions of the statutes to which I have referred. A sentence must be served until the judgment is satisfied.

The writ should be dismissed and the relator remanded to the custody of the warden.