Matthew M. Levy, J.
This is a writ of habeas corpus. The relator contends that Edward J. Kenny (the person in whose behalf the proceeding is brought) is being illegally detained in prison. It is asserted that his maximum sentences have expired and that he is now entitled to his freedom. Testimony was Heard, decision was reserved on the issues presented, and briefs were submitted by the respective parties.
Kenny, unfortunately, is an habitual criminal. He was first arrested at the age of fifteen. Since that time- — -and he will be thirty-six years of age on his next birthday — his life pattern has evolved into cycles of being in and out of criminal courts and prisons. The problem before me is not one to be resolved on the basis of appeals for mercy or the merits of punishment or ascertainment of the basic causes of Kenny’s early and many conflicts with society. Neither is it one of the propriety of the policy of the repeated releases on parole which Kenny has enjoyed and abused. Nor is it for me to delve into the appropriateness of the exercise of discretion by the board in the making of any of its determinations and of its reconsideration thereof. The issue here is solely and entirely one of law — of the power and jurisdiction of the State Board of Parole to make the several determinations that it did — some seemingly favorable to Kenny; others not.
Insofar as a proper disposition of this writ is concerned, we can begin with Kenny’s career as of February 14, 1940. To aid in an understanding of the problem, I have prepared from the evidence presented (and annex as an appendix) a schedule of the computations of the “ time ” involved from that date. It appears that, after conviction of burglary in the third degree, Kenny, on February 14, 1940 (A)*, commenced the service of a sentence in Elmira Reformatory; the term was for a maximum of ten years (B). He served until August 29, 1941 (F), when the New York State Board of Parole released him on parole — owing eight years, three months and twenty-nine days on his maximum term (G-). While on parole, he was arrested on a new charge, convicted of attempted burglary in the third degree (a felony), and sentenced to a term of five to ten years in Sing Sing Prison (M). He was declared delinquent by the parole board, and on March 11, 1942 (H), when he was sent to Sing Sing Prison, he began serving the unexpired time of his Elmira *270 sentence. The board then fixed as one year the time which Kenny would be required to serve as the portion remaining of his Elmira commitment. On March 11, 1943 (L), he was reparoled from the Elmira sentence, to begin serving his new, the Sing Sing, sentence. This meant that both sentences would now begin to run concurrently, and that the time spent on the latter sentence should be regarded as satisfying in part the unexpired portion of the maximum jurisdiction over the inmate. The board determined that the maximum expiration date of the Elmira sentence was July 10, 1950 (I). On August 8, 1946, Kenny was paroled from the Sing Sing sentence, the board determining that the maximum expiration date of that sentence was January 22, 1953 (P). On January 13, 1947 (J, Q), while on this parole, he was arrested for a new burglary, and was declared by the board to be delinquent as of that date on both paroles. After pleading guilty to unlawful entry (a misdemeanor)— in response to this charge of burglary — he was sentenced by the court to Bikers Island penitentiary for an indeterminate term. Upon completion of this last sentence, he was returned to Sing Sing on March 30, 1948 (S), as a parole violator. On April 1, 1948, the board informed the warden of Sing Sing that ‘ We have charged Kenny with 3 years 5 months 27 days on the first sentence [K, T] and 6 years 8 days delinquent time on the second sentence [B, U]. The total delinquent time owed is 9 years 6 months 5 days, he having been allowed no parole jail time.” On October 24,1950, he was again paroled. Based upon these calculations, the board set the maximum expiration date of both sentences as October 5,1957 (V). Then, once again, in May, 1954, while on parole, Kenny was arrested on another new charge of burglary; he subsequently pleaded guilty to unlawful entry and was sentenced to the New York City Penitentiary. The parole board thereupon again declared him delinquent, as of the date of his arrest.
At the present time Kenny is awaiting transfer to State’s prison to serve his maximum sentence — if this court should decide that the sentences do not expire before October 5, 1957** (V), as contended by the respondents. On the other *271 hand, if the court agrees with Kenny that the maximum term during which he was subject to the supervision of the parole board was the date specified in the release paper pursuant to which he was released on August 8,1946 — i.e., January 22,1953, plus one year, two months and sixteen days delinquent time — then the date of expiration of his parole was April 8, 1954. If this is so, the subsequent arrest in May, 1954, took place after the jurisdiction of the parole board had expired, and therefore the delinquent warrant of May 21, 1954, under which Kenny is now detained, is void and illegal, and accordingly he should be released.
Notwithstanding a tangential submission presented by the respondents (which will be later discussed), there is in my opinion, but one basic issue to be decided by the court on this writ — and that is whether the earlier determination of the board (that in effect resulted in the two sentences running concurrently in part) was conclusive and binding upon it, so that, when the parolee was adjudged a parole violator in March, 1948, the board could not later change its determination so as to provide that the unexpired terms of his sentences should be regarded as running consecutively. It is the relator’s contention that, having once exercised its discretion in this case, the board did not have the power to reconsider and change its determination, whether in the light of new developments or otherwise.
Section 219 of the Correction Law, as it then read (L. 1939, ch. 753), is relied upon by the petitioner. In its relevant portions, it provides: “ If any prisoner be convicted * * * of a felony committed while on parole * * * he shall, in addition to the sentence which may be imposed for such felony, and before beginning to serve such sentence, be compelled to serve in state’s prison the portion remaining of the maxiumm term of the sentence on which he was released on parole from the time of such release on parole to the expiration of such maximum. * * * In the case of such prisoner released on parole from the Elmira reformatory the board of parole may in its discretion require him to serve such portion remaining of the maximum term of his sentence as the board shall deem appropriate.” From a reading of this statute, it is plain that while the power of the board to act as it did here — after the felony committed on parole — is indisputable, it is not so clear (from the language of this statute) that the board may act after a misdemeanor committed on parole. Nor does it appear (from the wording of this section) that in any case of delinquency, *272 the board may review nunc pro tunc the determination that it had made. But, that is only one statute in the scheme of the legislative purpose, and; notwithstanding an early opinion of the Attorney-General seemingly to the contrary (1943 Atty. Gen. 99-102),. I have found substantial authoritative support for the legal propriety of the board’s redetermination — statutory, judicial and factual.
‘ ‘ Parole is not a right, but a privilege, to be granted or withheld as discretion may impel.” (People ex rel. Cecere v. Jennings, 250 N. Y. 239, 241; see, also, People ex rel. Ingenito v. Warden, 267 App. Div. 295, 300, affd. 293 N. Y. 803.) Not even a prisoner’s compensation or earned time while in prison (Correction Law, art. 9) is such a matter of vested right that it cannot be cancelled by the State Board of Parole for a violation of the parole agreement (Correction Law, §§ 218, 219; People ex rel. Gariti v. Brophy, 255 App. Div. 823, appeal dismissed 279 N. Y. 778; People ex rel. Threadcraft v. Brophy, 255 App. Div. 823). The board has “the duty of determining what prisoners * * * may be released on parole and when and under what conditions.” (Correction Law, § 210.) “ No prisoner shall be released on parole * * * [unless] the board of parole is of opinion that there is reasonable probability "that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board of parole shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and inclosure upon such terms and conditions as the board shall prescribe, but to remain while thus on parole in the legal custody of the warden of the prison from which he is paroled, until the expiration of the maximum term specified in his sentence ” (Correction Law, § 213).
In pursuance of section 213 of the Correction Law, which (as has been seen) empowers the board to impose conditions to a prisoner’s release, the board required (and this inmate signed) a parole agreement on June 3, 1943, reading as follows:
“I * * * promise to abide by all the rules and regulations governing inmates of any state prison of which I may be an inmate. In promising this, I fully realize that any failure on my part to conduct myself in conformity with such rules and regulations, may result in the revocation of my parole and of the permission to start my new sentence.
“ In this event I know that the Board of Parole may, and can, end this parole as of the date of my misconduct, and charge me with any part of the balance of my sentence * * *.
*273 “ When I am released from prison, I agree to accept the supervision of the Board of Parole from the date of my release from prison until the expiration of either or both of my sentences, as specified on my release papers. I further promise to adhere to the conditions of my parole and to abide by all regulations of the Board of Parole.” In the conditions the inmate signed for his parole of August 8, 1946, he made similar promises of good behavior. Any violation by the prisoner of the conditions specified in writing by the board may render the prisoner liable to arrest and re-imprisonment ” (Correction Law, § 215).
The prisoner’s two sentences involved here — that commencing February 14, 1940, in Elmira (A) and that commencing March 11,1943, in Sing Sing (L) —were initially directed to be served consecutively (Correction Law, § 219; Penal Law, § 2190, subd. 2; Matter of Riccardi v. Wilson, 254 App. Div. 603). Only by virtue of parole were they allowed to run concurrently. As appears from the release paper dated July 12, 1946, the board determined that the inmate was to serve one year on his original sentence (A), and then begin to serve his second sentence on March 11,1943 (L), and it fixed the maximum expiration date at January 22, 1953 (P) —thus indicating that the balance of the original sentence was to run concurrently with the second. Accordingly, the consolidated parole term of the inmate would expire on that date, January 22,1953 (P).
The respondents contend that the parole board did not have the power to order (in effect) the concurrent running of time on these sentences. Assuming that the respondents (of whom the State Board of Parole is one) may thus confess error and on that basis seek to keep the parolee in custody — a matter which I shall not now pass upon — it seems to me that their contention is but a surrender to a counsel of unnecessary despair. It is not needed to sustain the respondents’ position in chief.
Subdivision 3 of section 2190 of the Penal Law provides that “ Where a person is convicted of two or more crimes and is sentenced to more than one term of imprisonment to be served consecutively, if such person is paroled after serving the minimum term of either such sentence, he shall be subject to the jurisdiction of the board of parole until the expiration of the maximum terms of all such consecutive sentences.” In the July 12, 1946, document, the maximum expiration date of the Sing Sing sentence was set at January 22,1953 (P). But the Elmira sentence had not terminated; it was merely running concurrently *274 — in part — with the second one. Thus, when, on January 13, 1947, the inmate was declared to be a parole violator (J, Q), the maximum term of neither sentence had expired. By, in effect, allowing the sentences to run concurrently in part, the board did not necessarily thereby determine that the first sentence (A) had been terminated. And had the board not granted the concession that it did, service of the second sentence (L) would not even have begun. In my view, the board had the power to reduce the actual service of the unexpired Elmira term to the one-year period which it did, and it had the power to determine that the balance of this unexpired Elmira term run concurrently with the sentence of March 9, 1942 (People ex rel. Rathbourne v. Martin, 261 App. Div. 1113; Matter of Riccardi v. Wilson, 254 App. Div. 603, supra, People ex rel. Cameron v. Wilson, 170 Misc. 1024, 1026).
On the other hand, I hold that the respondents are on sound ground in contending that the first sentence was not terminated when service of the second sentence was commenced. In People ex rel. Robinson v. Murphy (260 App. Div. 836, motion for leave to appeal denied 261 App. Div. 1035) the prisoner had been reparoled from one sentence to begin serving a second one for a crime committed while on parole. Thereafter he was released and subsequently declared delinquent. He was returned as a parole violator and it was determined that he owed time on both sentences. He contended that his first sentence was finally and conclusively terminated when he began the service of his second sentence, and that he was then entitled to release. This contention was held erroneous (see, also, People ex rel. Whitney v. Blanchard, 170 Misc. 4, and Correction Law, § 220).
When the State Board of Parole conditionally releases a prisoner, he remains in the legal custody of the Department of Correction until the expiration of his maximum sentence (Correction Law, §§ 220, 281). In my opinion, so long as the term of an inmate -has not expired, the board may, in the exercise of its discretion, change, modify or alter any of its determinations relative to the delinquent time owed by the inmate. In People ex rel. Kohlepp v. McGee (256 App. Div. 792, appeal dismissed 282 N. Y. 677) the prisoner had already earned — according to an earlier determination of the parole board — certain time off for good behavior. Later, the board changed its decision and in a de novo exercise of its discretion it held that the prisoner was not eligible for parole. This latter action was upheld by the court. It is only after the expiration of the time for which *275 a parolee is to be held that the board is without authority to change its determination. Concededly, the full maximum term (M) imposed by the 1943 sentence (L) had not expired (P) at the time of the prisoner’s reparole in October, 1950. Moreover, when the parole of August 8, 1946, was breached by delinquency as declared by the board in March, 1948, and the prisoner was returned to State prison in accordance with the board’s determination (S), that parole was fully and completely executed and had no further force and effect (see 1945 Atty. Glen., 182-183). The privileges of this inmate under that parole ceased; and in reparoling him in October, 1950, and in fixing the unexpired terms as of October 5, 1957, the board acted within its authority and discretion.
The action of the parole board, in the exercise of its discretion, revoking a prisoner’s parole and ordering him returned to prison, is not subject to review by habeas corpus so long as the board does not act in contravention of law (People ex rel. Kurzynski v. Hunt, 250 App. Div. 378, 379, motion for leave to appeal denied 275 N. Y. 652, certiorari denied 303 U. S. 654; cf. Matter of Hines v. State Bd. of Parole, 293 N. Y. 254; People ex rel. Ambrosio v. Brophy, 253 App. Div. 871, affd. 278 N. Y. 639; Matter of O’Connor v. State Bd. of Parole, 270 App. Div. 93, 96). “ Thus so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts ” (Matter of Hines v. State Bd. of Parole, supra, p. 257; see Matter of Razukas v. New York State Dept, of Correction, 186 Misc. 429, 433; Matter of Spitale, 276 App. Div. 632, 634, affd. 302 N. Y. 616; People ex rel. Kammerman v. Snyder, 73 N. Y. S. 2d 893, 894, and see, also, Matter of Bitz v. Canavan, 257 App. Div. 247). In a habeas corpus proceeding the petitioner must assume the burden of proof of overcoming the presumption of legality and regularity (People ex rel. Albanese v. Hunt, 292 N. Y. 528, 529). In my view, not only has the relator here failed to rebut this presumption, but, on the entire record, I find that the facts and the law support the determinations of the parole board. The inmate’s sentences have not expired. He is not being unlawfully detained. The writ is dismissed. The prisoner is remanded. Order signed.
(See Appendix following)
*276 APPENDIX
The First Sentence — February 13, 1940 (for a maximum of ten years)
Tear Month Day
A. Began serving first (Elmira) sentence 1940 2 14
B. Maximum term .................... 10 0 0
0. Expiration date at time of sentence... 1950 2 13*
D. Jail time allowed................... 0 1 15
E. Adjusted maximum expiration date.. 1949 12 28
F. Date paroled ...................... 1941 8 29
Q-. Unexpired term when paroled........ 8 3 29
H. Date returned to Sing Sing on both sentences, the Elmira sentence to be served first (arrested January 19, 1942; convicted March 9, 1942) 1942 3 11
I. Expiration date at time of new sentence (parole granted February 17, 1943 — effective March 11, 1943, service of new sentence to begin March 11, 1943)................. 1950 7 10
J. Declared delinquent (convicted March 18, 1947, and sentenced to Bikers Island for indeterminate term)____ 1947 1 13
K. Unexpired term when returned to Sing Sing as a parole violator on March 30, 1948 (after release from Bikers Island sentence) ....... 3 5 27
The Second Sentence — March 9, 1942 (for a maximum of ten years)
L. Began serving second (Sing Sing) sentence ........................... 1943 3 11
M. Maximum term.................... 10 0 0
N. Expiration date at time of sentence.. 1953 3 10*
O. Jail time allowed................... 0 1 19
*277 Year Month Day
P. Adjusted maximum expiration date, as fixed by board on July 12, 1946 (parole to commence August 8, 1946) .......................... 1953 1 21**
Q. Declared delinquent (convicted March 18, 1947, and sentenced to Bikers Island for indeterminate term)... 1947 1 13
B. Unexpired term when returned to Sing Sing as a parole violator on March 30, 1948 (after release from Bikers Island sentence).......... 6 0 8 CONSOLIDATED COMPUTATION
S. Beturned to Sing Sing for violation of August 8, 1946 parole............ 1948 3 30
T. Unexpired portion of first sentence... 3 5 27
U. Unexpired portion of second sentence 6 0 8
V. Maximum expiration date of both sentences, as fixed by board on September 27, 1950 (parole to commence October 24, 1950).......... 1957 10 5
FOOTNOTES TO APPENDIX
* Inmate is credited with full day for portion thereof served.
** January 22,1953, is the date appearing on the parole release paper and therefore in the opinion. The one day variance in computation has no effect upon the determination of this writ.

 These parenthetical capital letters — to be found from time to time throughout the opinion — refer to specific lines in the appendix.

 This is the date as computed by the board and noted on Kenny’s parole release paper dated September 27, 1950. Because of the later commission of an additional crime, Kenny was again declared delinquent as of May 21, 1954, was convicted of unlawful entry and was sentenced on July 27, 1954, for a term of one year at Bikers Island. This, of course, would extend the Tna-yimmu expiration date here mentioned.